IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Rodolfo Perez, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | CIVIL ACTION NO. 1:17-CV-00043 | |
| § | | |
| Megan Brennan, Postmaster General of the § | | |
| United States, U.S. Postal Services, § | | |
| § | | |
| Defendant. | | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant's Motion to Dismiss [Doc. No. 9], Plaintiff's Response to Defendant's Motion to Dismiss [Doc. No. 15], and Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss [Doc. No. 18]. For the following reasons, the Court grants the Defendant's motion in part and denies it in part.

### **I. Background**

Plaintiff Rodolfo Perez ("Plaintiff") is a former employee of the United States Postal Service. [Doc. No. 1, at 2]. He has brought suit against the Defendant, Megan Brennan, Postmaster General of the United States ("Defendant"). [*Id.*]. Plaintiff began working for the Postal Service in 1982, and was last employed as a City Letter Carrier. [*Id.*]. According to the pleadings, Plaintiff is Hispanic, of Mexican-American heritage. [*Id.*].

Plaintiff alleges that, when Jeffery Jenkins began working as the Postmaster of the Brownsville post office in the fall of 2007, he created a hostile work environment. [*Id.*]. Plaintiff claims that in September 2012 he received a subpoena and gave testimony in another case also apparently concerning racial animus at the post office, where he says he testified about Postmaster Jenkins's ongoing race discrimination and retaliation. [*Id.* at 3]. He also says he was

1

"currently engaged in his own EEO complaint of discrimination and retaliation" at that time. [*Id.*].

On December 26, 2012, the day after Christmas, Plaintiff claims that his first-level supervisor, Jose Delgado, accused him of coming to work drunk and ordered him to go home. [Doc. No. 9-5, at 3]. Plaintiff says he was not drunk or impaired and complains that management "allowed [him] to drive himself home," but apparently does not dispute that he smelled of alcohol or that he had consumed some amount of alcohol. [Doc. No. 1, at 3]. On December 28, 2012, Plaintiff's superiors conducted a Pre-Disciplinary Interview with him, and on January 24, 2013, he was issued a seven-day suspension for the alleged on-duty impairment. [*Id.* at 4].

Plaintiff also alleges that he was issued a letter of warning on January 22, 2013, which admonished him for unacceptable attendance. [*Id.* at 3]. Plaintiff claims he had taken off "less than three days due to illness," and that he provided medical documentation for his absence. [*Id.*]. The letter rebuked Plaintiff for taking five days of unscheduled sick leave between October 12, 2012, and January 8, 2013, and approximately 6 and ½ hours of unscheduled leave when he was sent home the day after Christmas. [Doc. No. 9-5, at 4].

Plaintiff alleges that Postmaster Jenkins called the Hispanic and Mexican-American employees of the post office "lazy," although he does not say when this occurred. [Doc. No. 1, at 3]. Plaintiff claims that he was constructively discharged, effective February 1, 2013. [*Id.* at 4].

On Mach 8, 2013, Plaintiff filed an equal employment opportunity ("EEO") complaint with the Postal Service. [Doc. No. 9-6, at 1]. He raised the following issues: 1) discrimination based on race and national origin, 2) retaliation, and 3) harassment. [*Id.*]. On April 1, 2013, he received a letter ("the acceptance letter") from the Postal Service, notifying him which of the issues he raised had been accepted for investigation. [*Id.* at 5]. The letter informed him that the

Postal Service would investigate his discrimination and retaliation claims, but the harassment issue he raised had not been accepted. [*Id.*]. The letter told him that if he disagreed with the decision regarding the harassment claim, he could respond in writing within seven days. [*Id.*]. Plaintiff did not respond. [*Id.*].

After the investigation resulted in the denial of his two accepted claims, the Postal Service notified Plaintiff that he could request a hearing before an Administrative Law Judge ("ALJ") from the Equal Employment Opportunity Commission ("the EEOC"), which he did. [Doc. No. 9-6, at 2]. On April 7, 2016, the ALJ issued a summary judgment decision ("the ALJ decision") against Plaintiff, and also specifically noted that Plaintiff's harassment claim was not before the ALJ for adjudication. [Doc. No. 9-5, at 1, 10].

He appealed that decision, and on November 17, 2016, the EEOC affirmed the ALJ ("the EEOC appeal decision"). [Doc. No. 9-6, at 1]. That decision, too, informed him that his claims had been denied, except for his harassment claim, which was not before the Commission either. [*Id.* at 5].

On February 21, 2017, Plaintiff filed this lawsuit. [Doc. No. 1]. In his complaint, Plaintiff asserts three claims, each in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"): (1) he claims that the Defendant discriminated against him because of his race and national origin, (2) he claims that the Defendant retaliated against him because of testimony he gave in another discrimination case and because of his own EEO complaints, and (3) he claims that the Defendant fostered a hostile work environment. [Doc. No. 1, at 4–6]. Defendant asks this Court to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. Legal Standard

### A. 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court should dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 570). The plausibility standard "is not akin to a probability requirement," though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678.

### B. 12(b)(1) Standard

Rule 12(b)(1) requires a court to dismiss claims for which the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court must accept all factual

allegations in the plaintiff's complaint as true when ruling on the motion to dismiss for lack of subject matter jurisdiction. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

**C. Documents Properly Considered**

Defendant asks this Court to consider several documents that arose out of Plaintiff's EEO charge and its resulting adjudication. These include the National EEO Investigative Services Office Acceptance for Investigation Letter to Plaintiff [Doc. No. 9-4] ("the acceptance letter"), the EEOC Decision on Record, EEOC Case No. 451-2014-00059X [Doc. No. 9-5] ("the ALJ decision"), and the EEOC's decision on Plaintiff's appeal, Appeal No. 451-2014-00059X ("the EEOC appeal decision") [Doc. No. 9-6]. Defendant asks the Court either to consider these documents because they are incorporated by reference in the Plaintiff's Complaint, or to take judicial notice of them.

Ordinarily, when deciding a 12(b)(6) motion to dismiss, a court's analysis should focus exclusively on what appears in the complaint and its proper attachments. *See Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). A court may, however, consider documents omitted by the plaintiff which are "explicitly referenced" in the complaint, and which are "central or integral" to his claim. *See Werner v. Department of Homeland Security*, 441 F. App'x 246, 248 (5th Cir. 2011) (converting a 12(b)(6) dismissal to summary judgment because the trial court relied on documents not explicitly referenced in the complaint); *see also* 5C Charles Alan Wright and Arthur P. Miller, Federal Practice and Procedure § 1366 (3d ed. 2017) (describing the "central or integral" standard). The Fifth Circuit has held, however, that this is an exception of "limited" scope. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

The Court declines to hold that the documents are incorporated in the complaint by reference. In this case, Plaintiff references the three proffered documents tangentially, referring generally to having met "the prerequisites to jurisdiction," but does not discuss them explicitly. [Doc. No. 1 at 1].

The Defendant has also requested that this Court take judicial notice of these documents—a request to which there has been no objection. A court may take judicial notice of documents as public records for purposes of a 12(b)(6) analysis. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). The Federal Rules of Evidence state that judicial notice is appropriate when a fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and when "a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201.

The Court hereby takes judicial notice of the ALJ decision and the EEOC appeal decision. [Doc. No. 9-5, 9-6]. These documents are matters of public record, they are undisputed, and are therefore appropriate for judicial notice. Nevertheless, the Court declines to take judicial notice of the acceptance letter, Doc. No. 9-4, which was a letter written to the Plaintiff. Since it is not a matter of public record, it is not an appropriate subject for judicial notice. *See Tucker v. Waffle House Inc.*, No. 12-2446, 2013 WL 1588067 at *7 (E.D. La. Apr. 11, 2013) (declining to take judicial notice of a similar EEO acceptance letter, where the parties did not indicate that the letter ever became publicly available.).

### III. Plaintiff's Discrimination Claim

Plaintiff's first claim is that he was discriminated against because of his race and national origin. [Doc. No. 1, at 2]. Defendant asks the Court to dismiss this claim because Plaintiff has failed to state a plausible claim of discrimination. [Doc. No. 18, at 3].

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In a Title VII case, the burden is on the plaintiff to prove a prima facie case that the employer made an employment decision that was motivated by a protected factor. *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802–03 (1973).

Under the *McDonnell Douglas* framework, to establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he is qualified for the position, (3) an adverse employment action occurred, and (4) he was replaced by someone outside the protected group or was treated less favorably than other similarly situated employees outside the protected group. *Id.* at 802. If the plaintiff meets his burden to establish a prima facie case, the burden then shifts to the defendant to establish non-discriminatory reasons for the adverse employment actions. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the defendant is successful, the burden again shifts to the defendant to show that the proffered reasons are a mere pretext for discrimination. *Id.*

Plaintiff argues that, in a discrimination case, a plaintiff need not establish a prima facie case to survive a motion to dismiss. [Doc. No. 15, at 1–3]. Plaintiff cites the Supreme Court's decision in *Swierkiewicz v. Sorema NA*, 534 U.S. 506 (2002), in which the Court held that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading

requirement." 534 U.S. at 510. The Court ruled that a plaintiff in a discrimination case need not plead specific facts establishing a prima facie case under the *McDonnell Douglas* framework, but need only submit a complaint containing "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 508, citing Fed. R. Civ. P. 8(a)(2).

Since the *Swierkiewicz* decision, other courts have attempted to clarify the pleading standard in discrimination cases. These courts have made it apparent that a complaint still must rise above "the speculative level." *See EEOC v. SDI of Grapevine Texas*, No. 3:08–CV–1606–L, 2009 WL 1469779, at *2 (N.D. Tex. May 27, 2009). While a plaintiff does not need to allege specific facts establishing a prima facie case to defeat a motion to dismiss, "it must nevertheless give fair notice of the basis of Plaintiff's claims and the claims must be facially plausible." *Evans-Rhodes v. Northwest Diagnostic Clinic, P.A.*, No. 4:13-cv-01626, 2013 WL 563003 at *2 (S.D. Tex. Oct. 11, 2013) (citing *E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp 2d. 499, 517 (S.D. Tex. 2012).

Here, Plaintiff has failed to plead sufficient facts that could establish a claim of racial discrimination. He asserts that postmaster Jenkins called the Hispanic and Mexican-American employees at the post office "lazy," but does not say whether this occurred once or more than once, or even when it happened. Taking the Plaintiff's allegation as true, this comment is not sufficient to allege discrimination.[1] Plaintiff has pleaded no other facts from which this Court can even construe as being evidence of discriminatory conduct toward him. He baldly concludes that he was treated differently because of his race, but offers no factual assertions to support this

---

[1] In the following cases, derogatory statements have been found not to be discriminatory with respect to an employee's "terms, conditions, or privileges of employment" as prohibited by Title VII: *Harilall v. Univ. Health Sys. Dev. Corp.*, No. 98–50652, 1999 WL 152923, at *4 (5th Cir. Feb. 18, 1999) ("Wetback" and "illegal alien" comments did not constitute pervasive harassment); *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 329–30 (5th Cir. 1998) ("Buckwheat" and "Porch Monkey" comments insufficient to support a verdict of racial discrimination); *Adams v. B & B Rests., Inc.*, No. H–07–1352, 2008 WL 4155458, at *4 (S.D. Tex. Sept. 4, 2008) (no hostile work environment resulting from single incident where employee "got close in [plaintiff's] face and said 'F—k you' three times," and then "yelled on the phone to her supervisor, 'Get this n—r bitch out of my store.' ").

8

claim. Plaintiff simply has not pleaded enough facts for this Court to conclude that a claim of racial discrimination would be "plausible." See *Twombly*, 550 U.S. at 555.

The Court finds that Plaintiff has failed to raise a claim that is anything more than speculative. Accordingly, the Court grants the Defendant's motion on this claim.

### IV. Plaintiff's Retaliation Claim

Plaintiff next claims that Defendant impermissibly retaliated against him because he testified in a co-worker's Title VII case against the Defendant and he "engaged in his own EEO complaint of discrimination and retaliation." [Doc. No. 1, at 3, 5]. Defendant asks the Court to dismiss this claim because Plaintiff has failed to state a plausible claim of retaliation. [Doc. No. 18, at 5].

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action. *Aryain v. Wal–Mart Stores Texas*, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff does make a prima facie showing, the burden then shifts to the employer to articulate a non-retaliatory reason for the employment action. *Id.* If the employer can meet this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason. *Id.*

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

As a part of the prima facie case of retaliation, a plaintiff must show that an adverse employment action was taken against him. See *Aryain*, 534 F.3d at 484. "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000). The Supreme Court has held that "a retaliation claim may rest on an action that "a reasonable employee would have found . . . [to be] materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). The Fifth Circuit has held that allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions. *King v. Louisiana*, 294 Fed. Appx. 77, 85 (5th Cir. 2008) (citing *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)).

## A. The "Drunk-on-Duty" Incident

Plaintiff complains that his being sent home and suspended because he smelled of alcohol was a retaliatory action. [Doc. No. 1, at 5]. Plaintiff disputes that he was impaired or drunk, and says that management took the action to retaliate against him. [*Id.* at 3].

Plaintiff has pleaded sufficient facts to establish all three aspects of a prima facie case of retaliation on this count. First, he has alleged that he took part in Title VII-protected activities by participating in an EEO lawsuit and filing an EEO complaint. *See Ackel*, 339 F.3d at 385 (holding that protected activities include making a charge and testifying). Second, the Court finds that the seven-day suspension he received is an adverse employment action under the relevant case law. *See Burlington N.,* 548 U.S. at 68 ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse . . . ."). Third, Plaintiff alleges in his pleading that there was a causal connection between the two. [Doc. No. 1, at 2–3]

("[T]he Plaintiff engaged in protected activity by filing EEO complaints of discrimination and as being a witness in the EEO process, whereby the Plaintiff suffered sustained retaliation.").

Having established a prima facie case, the Plaintiff has succeeded in shifting the burden to the Defendant, who must now supply a non-retaliatory reason for the adverse action under the *McDonnell Douglas* framework. *See Aryain*, 534 F.3d at 484. Assuming the Defendant can allege such a reason for the suspension (here, ostensibly that the Plaintiff was under the influence of alcohol at work) the burden will shift back to the Plaintiff to show that this reason was a mere pretext for retaliation. *See id.*

At the current stage of the proceedings, Defendant has not yet argued that Plaintiff is unable to meet his burden at the third step of the *McDonnell Douglas* framework. In its Motion to Dismiss, Defendant expressly asks the Court to dismiss Plaintiff's retaliation claim "because he failed to establish the elements of a prima facie claim" *i.e.*, at the first step of *McDonnell Douglas*, but does not ask for dismissal at the third step. [Doc. No. 9, at 1]. Although it is unclear what evidence Plaintiff would be able to adduce to rebut an assertion that the suspension was handed down for a legitimate reason, the Court cannot speculate. Defendant has not properly moved the Court to decide the Plaintiff's claim on these grounds and dismissal at this stage would be premature.

Accordingly, the Court denies the Defendant's motion on this claim.

**B. The Letter of Warning for Unacceptable Attendance**

Plaintiff also complains that the letter of warning issued to him because of unacceptable attendance was retaliatory. [Doc. No. 1, at 5].

The Court holds that the letter of warning Plaintiff received for his absences from work was not, in and of itself, an adverse employment action. By its own title, the letter is a "warning"

and is not itself an action, apart from warning of other possible discipline. Plaintiff has not alleged that his material working conditions were affected as a result of the letter: he was not fired or suspended, his pay did not change, and his working conditions were not altered. The letter is analogous to the "verbal reprimands" that the Fifth Circuit has held not to be adverse. *King*, 294 Fed. Appx. at 85. A "reasonable employee" would not have found the letter to be "materially adverse." *Burlington N.,* 548 U.S. at 68. Plaintiff has failed to plead an adverse employment action, and cannot establish a plausible prima facie of retaliation.

Plaintiff has failed to plead sufficient facts to establish that a prima facie case of retaliation on this count is plausible. Accordingly, the Court grants the Defendant's motion as to this claim.

## V. Plaintiff's Hostile Work Environment Claim

Additionally, Plaintiff claims that the working conditions at the post office created a hostile work environment. (Plaintiff's Complaint refers to this cause of action sometimes in terms of harassment and at other times in terms of hostile work environment. The Court will utilize the latter description.) [Doc. No. 1, at 4]. Defendant asks the Court to dismiss Plaintiff's hostile work environment claim because he failed to exhaust his administrative remedies.[2]

Before bringing a lawsuit for employment discrimination claims, a federal employee must exhaust his administrative remedies. *See Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs*,

---

[2] The Fifth Circuit has issued conflicting opinions on the nature of the exhaustion requirement. Some decisions hold that it is simply a prerequisite to filing suit and is to be treated as a statute of limitations, thus subject to equitable doctrines of waiver, tolling and estoppel. Other cases hold that it is jurisdictional, and the failure to perform bars any jurisdictional review. *See Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) (recognizing the conflict).
    For example, the Fifth Circuit stated in one case that "the exhaustion requirement is not jurisdictional, however, and is subject to the equitable defenses of waiver, estoppel, and equitable tolling. . . ." *Yee v. Baldwin-Price*, 325 Fed. Appx. 375, 378 (5th Cir. 2009) (citing *Pacheco*, 966 F.2d at 905). In another case, the court held that "the district court did not err when it dismissed [the Plaintiff's] complaint for lack of subject matter jurisdiction," and that "Congress intended for the exhaustion of administrative remedies to be a jurisdictional prerequisite to filing a civil action in federal court." *Atkins v. Kempthorne*, No. 09–60401, slip op. at 3–4 and n. 3 (5th Cir. Nov. 27, 2009) (citing *Tolbert v. United States*, 916 F.2d 245, 249 (5th Cir.1990)).

121 F.3d 203, 206 (5th Cir. 1997). Under federal regulations, an employee who believes that he has been discriminated against on the basis of race, color, religion, sex, national origin, age, or handicap must contact an EEO counselor within forty-five days of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1). If the counselor is unable to resolve the issue, a federal employee must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. *See* 42 U.S.C. § 2000e–16(c); *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). The employee may appeal to the EEOC or file suit in federal court if the agency does not resolve the issue in the employee's favor. *Id.* If the complaining employee chooses to pursue his remedies with the EEOC appeal, however, he is required to wait until that administrative remedy is exhausted, before filing an action in federal district court. *Tolbert*, 916 F.2d at 249. The employee must file a federal suit within 90 days of receiving the notice of final action or after 180 days have passed from the filing of the administrative complaint if the agency does not issue a final action. 42 U.S.C. § 2000e–16(c).

Several courts have held that a claim that is not an accepted issue for investigation by the initial agency investigation may not be brought later in a federal lawsuit. *See, e.g.*, *Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 871 (S.D. Tex. 2010) (barring a claim that was not an accepted issue), *Carter v. Rubin*, 14 F. Supp. 2d 22, 36 n. 4 (D.D.C. 1998) (dismissing claims brought before the court that were not accepted issues by the investigating agency). The purpose of the exhaustion requirements for federal employees is to allow agencies to have an opportunity to resolve complaints of employment discrimination informally before resorting to the court system. *See e.g.*, *McCarthy v. Madigan*, 503 U.S. 140, 144–48, (1992) (superseded on other grounds by statute in *Booth v. Churner*, 532 U.S. 731, 739 (2001)) (noting that the exhaustion of remedies requirement protects administrative agency authority, promotes judicial efficiency, and

furthers the "commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes . . . before it is haled into federal court.").

Plaintiff failed to exhaust his administrative remedies as to a charge of hostile work environment by failing to pursue his claim beyond the initial complaint. After Plaintiff submitted his EEO charge, the agency accepted two of his claims for investigation, but rejected his hostile environment claim. [Doc. No. 9-6, at 5]. Plaintiff had a seven-day window to challenge the Postal Service's decision not to accept it as an issue, but he did not do so. [*Id.*]. The issue was not accepted, it was not investigated, it was not before the ALJ, nor was it before the EEOC Commission.

Both the ALJ decision and the EEOC appeal decision take pains to declare that they lacked jurisdiction to review the harassment claim. [Doc. No. 9-5, at 10; Doc. No. 9-6, at 5]. The ALJ decision states that Plaintiff's charge of harassment was "not before the Commission," and the EEOC appeal decision affirms that statement. [*Id.*]. Plaintiff's claim of harassment did not go any further than his initial complaint, where it was rejected. He then dropped the claim and the Postal Service did not have "an opportunity to correct its own mistakes." *McCarthy*, 503 U.S. at 145.

Whether this issue should be resolved as a jurisdictional issue under 12(b)(1), or as a limitations issue is unclear under Fifth Circuit precedent. *See supra*, note 2. On one hand, this Court could follow the line of Fifth Circuit cases that describe the filing requirement as a jurisdictional prerequisite. *See, e.g., Ruiz v. Donahoe*, 569 Fed. Appx. 207, 211–12 (5th Cir. 2014) ("Federal subject matter jurisdiction does not exist unless [administrative remedies have been exhausted]."). Under that theory, the Court lacks the subject matter jurisdiction required to

address Plaintiff's claim, and the Court must dismiss it under Federal Rule of Civil Procedure 12(b)(1).

On the other hand, the Court could follow the line of cases that describe the exhaustion requirement as a limitations issue. *See, e.g.*, *Yee*, 325 Fed. Appx. at 378. In that vein, the Court could rule that the Plaintiff did not comply with Title VII's limitations requirements. *See* 42 U.S.C. § 2000e–16(c). The Postal Service notified him in the April, 1, 2013 acceptance letter that it would not investigate his harassment claim. [Doc. No. 9-6, at 5]. Plaintiff neither appealed that decision within the seven days allowed by the agency, nor did he file a claim in federal court within the 90 days required by Title VII. *See* § 2000e–16(c). Plaintiff failed to file this lawsuit within the limitations period described by the statute, or to take an action that would toll the limitations period. Under the limitations theory, the Court must dismiss this claim under Federal Rule of Civil Procedure 12(b)(6).

Regardless of which line of cases this Court follows, the result is clear. Plaintiff failed to exhaust his administrative remedies as to the issue of a hostile work environment, and the Court grants the Defendant's motion on this claim.

## VI. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss as to Plaintiff's claims of discrimination, hostile work environment, and the retaliation claim that arose out of the letter of warning. The Court denies Defendant's motion as to the claim of retaliation that arose out of the "drunk-on-duty" incident.

Signed this 17th day of November, 2017.

_____
Andrew S. Hanen
United States District Judge